Filed 10/31/23  In re Christopher M. CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re Christopher M., a Person Coming Under the Juvenile Court Law. | B314839 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. L.F., Defendant and Appellant. | (Los Angeles County Super. Ct. No. DK01271C) |

APPEAL from an order of the Superior Court of Los Angeles County.  Michael C. Kelley, Judge.  Conditionally affirmed and remanded with directions.

Michelle E. Butler, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Avedis Koutoujian, Deputy County Counsel, for Plaintiff and Respondent.

_____

**INTRODUCTION**

L.F. (Mother), the mother of a dependent child in a legal guardianship with a maternal aunt, appeals from the juvenile court's order denying her Welfare and Institutions Code[1] section 388 petition in which she sought placement of the child with her or the child's adult sibling. Mother's sole contention on appeal is that the juvenile court and the Los Angeles County Department of Children and Family Services (DCFS) failed to comply with the applicable provisions of the Indian Child Welfare Act of 1978 (ICWA; 25 U.S.C. § 1901 et seq.) and related California law. We conclude the juvenile court prejudicially erred in finding that ICWA did not apply because DCFS failed to comply with its duty of inquiry as to the child's maternal extended family. Therefore, we conditionally affirm the order denying Mother's section 388 petition and remand for ICWA compliance.

**FACTUAL AND PROCEDURAL BACKGROUND**

Mother and C.M. (Father) are the parents of Christopher M., a boy born in March 2010. Mother also has three adult children, S.G., M.M., and P.M., from prior relationships. M.M. and P.M. were minors at the start of the proceedings but have

---

[1] Unless otherwise stated, all further statutory references are to the Welfare and Institutions Code.

2

since reached the age of majority. Only Christopher is the subject of this appeal.

On September 17, 2013, DCFS filed a section 300 petition on behalf of Christopher, M.M., and P.M. based on Mother's substance abuse. The petition included an Indian Child Inquiry Attachment (ICWA-010) form that indicated both Mother and Father denied any Indian ancestry.

At the September 17, 2013 detention hearing, Mother appeared and submitted a Parental Notification of Indian Status (ICWA-020) form in which she checked a box stating she did not have any Indian ancestry as far as she knew. Father did not appear. At the hearing, the juvenile court found that ICWA did not apply.

In its October 2013 jurisdictional and dispositional report, DCFS recounted that Mother was born in El Salvador and came to the United States when she was 11 years old. She was raised by her paternal grandmother in El Salvador, and began residing with her parents when she moved to the United States. Mother denied any Indian ancestry. DCFS reported that Father was born in Mexico and came to the United States when he was 19 years old. He had three sisters and two brothers. His mother and all of his siblings lived in Mexico, and his father was deceased. Father also denied any Indian ancestry.

At the October 29, 2013 jurisdictional and dispositional hearing, Father appeared and submitted an ICWA-020 form, stating he did not have any Indian ancestry as far as he knew. The juvenile court again found that ICWA did not apply. The court sustained an amended section 300 petition and declared the children dependents of the court. The court placed

3

Christopher in the home of his parents with family maintenance services.

On April 29, 2014, DCFS filed a section 342 petition on behalf of Christopher and his half-sibling, P.M., based on Mother's recurrent substance abuse, self-cutting behavior, and failure to comply with her court-ordered services. In an ICWA-10 attachment to the section 342 petition, DCFS stated that Mother was asked about the children's Indian status on April 7, 2014, and she again reported that there was no Indian ancestry in her family. On May 6, 2014, the court placed Christopher with his maternal aunt.

On June 17, 2014, the court sustained the section 342 petition, removed Christopher from the custody of his parents, and granted both parents family reunification services. During the reunification period, Christopher remained placed in the home of his maternal aunt. The maternal grandparents also resided in the home. At the 12-month review hearing on July 2, 2015, the court terminated the parents' reunification services and set the matter for a section 366.26 permanency planning hearing.

At the section 366.26 hearing on October 30, 2015, the court ordered a legal guardianship as the permanent plan for Christopher. On March 7, 2016, the court appointed the maternal aunt as the child's legal guardian, and terminated its dependency jurisdiction over Christopher with Kinship Guardianship Assistance Payment (Kin-GAP) funding in place. The court granted unmonitored visitation to Father and monitored visitation to Mother.

Three years later, on July 1, 2019, Mother filed a section 388 petition requesting additional visitation and custody of Christopher. At the time she filed the petition, Mother had

4

completed a 10-month in-patient drug program and begun residing with her adult daughter, S.G.  In its response to the petition, DCFS reported that, on August 19, 2019, Mother denied Indian ancestry.

On August 30, 2019, Mother appeared for a hearing on the section 388 petition and was reappointed counsel.  On that date, Mother submitted a second ICWA-020 form in which she again indicated that she had no Indian ancestry as far as she knew.  Father was provided with notice of the section 388 hearing, but did not appear.

At a contested hearing held on October 31, 2019, the court partially granted the section 388 petition.  The court reinstated jurisdiction over Christopher and ordered reunification services for Mother.  No services were ordered for Father, and he did not participate in any of the proceedings that were held following the reinstatement of jurisdiction.

After Mother received six months of reunification services, the COVID-19 pandemic delayed the case.  On December 7, 2020, the court terminated reunification services for Mother and ordered DCFS to resume permanent placement services for Christopher.  On April 6, 2021, the court set the matter for another section 366.26 hearing.  As of that date, Christopher remained in a legal guardianship with his maternal aunt, and continued to reside with her and the maternal grandparents.

On May 25, 2021, DCFS completed a concurrent planning assessment for Christopher.  During the assessment, the maternal aunt initially indicated that she wanted to move forward with adopting Christopher.  However, the maternal aunt later informed DCFS that she preferred to stay with a legal

guardianship instead because Mother became angry when she learned about the adoption plan.

On August 3, 2021, Mother filed a second section 388 petition. She requested that the court grant her custody of Christopher, or in the alternative, allow her adult daughter, S.G., with whom she was residing, to adopt the child. The following day, the trial court called the section 366.26 hearing. In a minute order for that hearing, the court stated that it found good cause to take the section 366.26 hearing off calendar, and that a further section 366.26 hearing was not required.

On August 25, 2021, the court held a prima facie hearing on Mother's second section 388 petition. The court denied the petition, finding that Mother had not shown changed circumstances or that the relief sought was in Christopher's best interest.

On August 27, 2021, Mother filed an appeal from the denial of her second section 388 petition. On October 6, 2021, during the pendency of Mother's appeal, the juvenile court terminated dependency jurisdiction over Christopher with an existing Kin-GAP guardianship in place.[2]

## DISCUSSION

On appeal, Mother argues the juvenile court erred in finding that ICWA did not apply because both the court and DCFS failed to comply with their duty of inquiry. DCFS asserts (1) Mother's appeal is moot, (2) ICWA was not implicated at the section 388 hearing from which she appeals, and (3) substantial

---

[2]    We previously granted DCFS's motion to take additional evidence or judicial notice of the juvenile court's October 6, 2021 minute order. (Code Civ. Proc., § 909; Evid. Code, § 452.)

6

evidence supports the finding that Christopher is not an Indian child.  We conclude Mother's appeal is not moot, and the hearing at issue on appeal is subject to the requirements of ICWA.  We further conclude the matter must be remanded for DCFS to conduct a proper ICWA inquiry of Christopher's maternal extended family, but no additional inquiry of the paternal extended family is required in this case.

## I.    Overview of ICWA and related California law

"ICWA reflects a congressional determination to protect American Indian children and to promote the stability and security of Indian tribes and families."  (*In re Josiah T.* (2021) 71 Cal.App.5th 388, 401 (*Josiah T.*).)  To that end, ICWA mandates that "[i]n any involuntary proceeding in a [s]tate court, where the court knows or has reason to know that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe" of the pending proceedings and the right to intervene.  (25 U.S.C. § 1912(a).)  Similarly, California law requires notice to the child's parent, Indian custodian, if any, and the child's tribe if there is "reason to know . . . that an Indian child is involved" in the proceeding.  (§ 224.3, subd. (a).)

Both juvenile courts and child protective agencies "have an affirmative and continuing duty to inquire whether a child for whom a petition under Section 300 . . . may be or has been filed, is or may be an Indian child."  (§ 224.2, subd. (a); see *In re Isaiah W.* (2016) 1 Cal.5th 1, 14.)  " 'This continuing duty can be divided into three phases:  the initial duty to inquire, the duty of further inquiry, and the duty to provide formal ICWA notice.' "  (*Josiah T.*, *supra*, 71 Cal.App.5th at p. 402.)

7

California law provides that the duty to inquire "begins with the initial contact" (§ 224.2, subd. (a)) and requires the juvenile court and child protective agency to ask all relevant involved individuals whether the child is or may be an Indian child (*Id.*, subds. (a)–(c)). At the first appearance of each party, the court must inquire whether that party "knows or has reason to know that the child is an Indian child," and must "instruct the parties to inform the court if they subsequently receive information that provides reason to know the child is an Indian child." (*Id.*, subd. (c).) Additionally, when the agency takes a child into temporary custody, it must inquire of a nonexclusive group that includes the child, the parents, and extended family members "whether the child is, or may be, an Indian child." (*Id.*, subd. (b)). Extended family members include adults who are the child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent. (25 U.S.C. § 1903(2); § 224.1, subd. (c).)

"If the [juvenile] court makes a finding that proper and adequate further inquiry and due diligence . . . have been conducted and there is no reason to know whether the child is an Indian child, the court may make a finding that [ICWA] does not apply to the proceedings, subject to reversal based on sufficiency of the evidence." (§ 224.2, subd. (i)(2).) We generally review the juvenile court's ICWA findings under the substantial evidence test, " ' "which requires us to determine if reasonable, credible evidence of solid value supports the court's order." ' " (*Josiah T.*, *supra*, 71 Cal.App.5th at p. 401.)

## II.   Mother's appeal is not moot

Prior to the filing of its respondent's brief, DCFS moved to dismiss the appeal as moot because the juvenile court has since

8

terminated its jurisdiction over Christopher. DCFS raises the same mootness argument in its respondent's brief. On April 19, 2023, we summarily denied DCFS's motion to dismiss. While Mother asserts this ruling precludes further consideration of the issue, the summary denial of a motion to dismiss an appeal does not establish the law of the case. (See *Kowis v. Howard* (1992) 3 Cal.4th 888, 901; *Building a Better Redondo, Inc. v. City of Redondo Beach* (2012) 203 Cal.App.4th 852, 865.) Nevertheless, after reexamining the merits of DCFS's argument, we conclude Mother's appeal is not moot.

"A case becomes moot when events ' "render[] it impossible for [a] court, if it should decide the case in favor of plaintiff, to grant him any effect[ive] relief." ' " (*In re D.P.* (2023) 14 Cal.5th 266, 276.) Although an order terminating the juvenile court's jurisdiction may render an appeal from a previous order in the proceedings moot, "dismissal for mootness in such circumstances is not automatic, but 'must be decided on a case-by-case basis.' " (*In re C.C.* (2009) 172 Cal.App.4th 1481, 1488.) "[T]he critical factor in considering whether a dependency appeal is moot is whether the appellate court can provide any effective relief if it finds reversible error." (*In re N.S.* (2016) 245 Cal.App.4th 53, 60.) "For relief to be 'effective,' two requirements must be met. First, the plaintiff must complain of an ongoing harm. Second, the harm must be redressable or capable of being rectified by the outcome the plaintiff seeks." (*In re D.P.*, at p. 276.)

Citing *In re Rashad D.* (2021) 63 Cal.App.5th 156 (*Rashad D.*), DCFS argues Mother's appeal is moot because she did not appeal from the juvenile court's order terminating jurisdiction over Christopher. In *Rashad D.*, the mother appealed from the jurisdictional finding and dispositional order declaring her child a

9

dependent of the juvenile court, but she did not appeal from the subsequent order terminating jurisdiction with a custody order granting her sole physical custody and both parents joint legal custody. (*Id*. at p. 162.) In dismissing the appeal as moot, the Court of Appeal reasoned that, to the extent the mother was seeking to have the custody order set aside through a reversal of the jurisdictional finding or dispositional order, "an appeal from the orders terminating jurisdiction and awarding custody is necessary for this court to be able to provide effective relief." (*Id*. at p. 164.) Unless the appellate court reversed those orders, the juvenile court had "no jurisdiction to conduct further hearings in the now-closed case." (*Ibid*.) But because the mother "did not appeal those orders, they are not . . . subject to appellate review. And because the juvenile court terminated its jurisdiction . . . and that termination is final, a remand for further proceedings in the juvenile court would be meaningless." (*Id*. at pp. 164–165.)

Here, the juvenile court terminated its dependency jurisdiction over Christopher with a Kin-GAP guardianship in place during the pendency of Mother's appeal. However, even after terminating the dependency, the juvenile court retained jurisdiction over Christopher as a ward of the legal guardianship. As the relevant statute provides, "[f]ollowing establishment of a legal guardianship, the court may continue jurisdiction over the child as a dependent child . . . or may terminate its dependency jurisdiction and retain jurisdiction over the child as a ward of the legal guardianship." (§ 366.3, subd. (a)(3); see *In re Priscilla D.* (2015) 234 Cal.App.4th 1207, 1216.) Because the juvenile court continues to have jurisdiction over Christopher through the legal guardianship, it maintains the authority to conduct further proceedings in the case, such as adjudicating petitions to modify

10

or terminate the guardianship, and if appropriate, reinstating its dependency jurisdiction.  (See § 366.3, subd. (b).)  Thus, unlike *Rashad D.*, this is not a case where the juvenile court lacks "jurisdiction to conduct further hearings in [a] now-closed case." (*Rashad D.*, *supra*, 63 Cal.App.5th at p. 164.)

Furthermore, if this court were to find reversible error with respect to the ICWA inquiry, we could grant effective relief to Mother in the form of a remittitur remanding the matter to the juvenile court with directions to ensure that DCFS conducts a proper inquiry into Christopher's possible Indian ancestry.  (See *In re S.G.* (2021) 71 Cal.App.5th 654, 664.)  Accordingly, an appeal from the juvenile court's order terminating dependency jurisdiction over Christopher is not necessary for this court to provide effective relief on Mother's ICWA claim.  Under these circumstances, Mother's appeal is not moot.

## III.  ICWA is applicable to the section 388 hearing where Mother sought a change in custody

DCFS also argues the juvenile court's ICWA finding should be affirmed because ICWA's requirements were not implicated at the hearing from which Mother appeals.  We disagree.

ICWA applies to any " 'child custody proceeding' " involving an Indian child.  (25 U.S.C. § 1903(1).)  Under California law, an " 'Indian child custody proceeding' means a hearing during a juvenile court proceeding . . . involving an Indian child . . . that may culminate in one of the following outcomes:  [¶] (A) Foster care placement . . . [¶] (B) Termination of parental rights . . . [¶] (C) Preadoptive placement . . . [¶] (D) Adoptive placement." (§ 224.1, subd. (d)(1).)  "Foster care placement" includes "removal of an Indian child from their parent . . . for placement in a foster home, institution, or the home of a guardian . . ., in which the

11

parent . . . may not have the child returned upon demand, but in which parental rights have not been terminated." (*Id*., subd. (d)(1)(A).) Where there is reason to know that an Indian child is involved, ICWA notice must be provided "for hearings that may culminate in an order for foster care placement, termination of parental rights, preadoptive placement, or adoptive placement." (§ 224.3, subd. (a).) Additionally, "[w]henever an Indian child is removed from a foster care home or institution, guardianship, or adoptive placement for the purpose of further foster care, guardianship, or adoptive placement, placement of the child shall be in accordance with [ICWA]." (§ 224, subd. (b).)

Mother appeals from the juvenile court's order denying her second section 388 petition. In that petition, Mother requested the court grant her custody of Christopher, or alternatively, allow Christopher's adult half-sibling, S.G., to adopt him. At the time Mother filed the petition on August 3, 2021, the court had reinstated its dependency jurisdiction over Christopher and set another section 366.26 hearing to determine whether a legal guardianship with the maternal aunt should remain the child's permanent plan. For reasons that are not clear from the record, the court took that section 366.26 hearing off calendar the day after Mother filed the petition, but it did not terminate its dependency jurisdiction at that time. Instead, Christopher remained a dependent of the court when it held the hearing on the section 388 petition.

If Mother had been granted the relief that she sought in her petition, then the court would have removed Christopher from his legal guardian, and either (1) returned him to Mother's custody, or (2) placed him in the home of S.G. and set the matter

12

for a new section 366.26 hearing to determine whether adoption by S.G. should be ordered as the child's permanent plan. Had Mother limited her section 388 petition to requesting that Christopher be returned to her care, then we would agree with DCFS that the hearing on the petition did not implicate ICWA because granting the requested relief would mean placing the child with a parent. This is so because ICWA has no application when parents seek return of a child to their care. (See *In re N.F.* (2023) 95 Cal.App.5th 170, 180.) However, based on the specific relief that Mother sought, another possible outcome at the hearing was a foster care placement with Christopher's adult half-sibling with adoption as the child's new permanent plan goal. The hearing on Mother's section 388 petition therefore met the definition of an "Indian child custody proceeding" if there was reason to know that an Indian child was involved. (§ 224.1, subd. (d)(1).)

## IV. Remand is required for DCFS to conduct an ICWA inquiry of maternal extended family members

Mother challenges the juvenile court's finding that ICWA did not apply on the grounds that the court and DCFS failed to comply with their duty of inquiry under ICWA and California law. She argues neither the court nor DCFS conducted an adequate ICWA inquiry of the parents, and instead relied solely on the parents' denials of Indian ancestry in their ICWA-020 forms. Mother also asserts the ICWA inquiry was inadequate because DCFS never asked any extended family members on either the paternal or maternal sides of Christopher's family about the child's possible Indian ancestry.

13

## A. ICWA inquiry of the parents

With respect to the inquiry made of the parents, the record reflects that DCFS filed the original section 300 petition in September 2013 on behalf of Christopher and his half-siblings, M.M. and P.M.  In September 2013 and again in October 2013, DCFS asked both Mother and Father if they had Indian ancestry, and each of them denied any Indian ancestry.  At their first court appearances, both Mother and Father also submitted ICWA-020 forms in which they indicated they did not have Indian ancestry as far as they knew.  At the October 2013 jurisdictional and dispositional hearing, the juvenile court found that ICWA did not apply based on the information provided by the parents.

Mother contends this inquiry of the parents was inadequate because the juvenile court did not independently inquire at the jurisdictional and dispositional hearing whether either parent knew or had reason to know that Chritopher was an Indian child.  Mother also claims the court failed to address an error in Father's ICWA-020 form, which listed M.M. (who has a different father) under the child's name instead of Christopher.  As DCFS points out, however, M.M. likely was named on the form because he was the first child listed in the dependency case title.  The failure to name Christopher appears to have been a simple oversight given that Father never claimed paternity over M.M., and there is nothing in the record to suggest Father intended to submit an ICWA-020 form for any child other than Christopher.  Moreover, both Mother and Father attended the hearing with their respective counsel, and neither the parents nor their counsel disputed the accuracy of the information in the ICWA-020 forms or the court's finding that ICWA did not apply.  Additionally, in August 2019, Mother again denied any Indian

14

ancestry both in an interview with DCFS and in an updated ICWA-020 form that she submitted at the hearing on her first section 388 petition. Although Father was given notice of the hearing, he did not appear or make any effort to participate in the reopened dependency case. Considering the totality of this record, we see no reversible error with respect to the ICWA inquiry made of the parents.

## B. ICWA inquiry of the paternal extended family

With respect to DCFS's failure to inquire of Christopher's paternal extended family, the record shows that, when DCFS interviewed Father for its jurisdictional and dispositional report in October 2013, he stated that he was the sole member of his family residing in the United States. Father also reported that Christopher's paternal grandfather was deceased, and that the child's paternal grandmother, aunts, and uncles all resided in Mexico. This is the only information in the record about the paternal side of Christopher's family, and there is no indication that Father provided DCFS with identifying or contact information for any paternal relatives.

As this court recently explained: " 'Where . . . a parent largely fails . . . to provide names and contact information for extended family members, [the Department's] ability to conduct an exhaustive ICWA inquiry necessarily is constrained.' [Citation.] . . . Requiring the Department to track down information about extended family members beyond that offered by participants in the proceedings would impose an undue burden on the Department and necessarily reduce the resources it has to otherwise protect the welfare of dependent children." (*In re H.B.* (2023) 92 Cal.App.5th 711, 720; see *In re S.S.* (2023) 90 Cal.App.5th 694, 704–705 (*S.S.*) [extended family inquiry

15

requirement is limited and intended to ensure social workers "ask an added question of extended family members whom [they] often already are investigating in their usual course of work"].) Because the record does not support an inference that DCFS ever had the names or contact information for any paternal extended family members, Mother has not shown DCFS failed to comply with its duty of inquiry as to the paternal side of Christopher's family.

### C.    ICWA inquiry of the maternal extended family

We reach a different conclusion, however, with respect to Christopher's maternal extended family.  The record reflects that, over the course of the dependency proceedings, DCFS had contact with several of Christopher's maternal relatives, including (1) the maternal aunt who was appointed Christopher's legal guardian; (2) the maternal grandparents who resided with Christopher and the maternal aunt as recently as April 2021; and (3) the adult half-sibling, S.G., with whom Mother was residing as of August 2021.  There is no indication in the record, however, that DCFS ever asked any of these extended family members whether Christopher is or might be an Indian child.

In the absence of any evidence that DCFS complied with its duty to inquire of these known and available extended family members, as required by section 224.2, subdivision (b), the juvenile court's implied finding that DCFS fulfilled its duty of inquiry as to the maternal side of Christopher's family was not supported by substantial evidence.  (See, e.g., *In re Jayden G.* (2023) 88 Cal.App.5th 301, 311 [ICWA error where DCFS failed to inquire of available extended family members for whom it had contact information]; *In re J.W.* (2022) 81 Cal.App.5th 384, 389 [ICWA error where DCFS did not ask mother's extended family

members about their Indian ancestry, despite having contact with maternal grandmother, uncle, and aunt]; *In re M.M.* (2022) 81 Cal.App.5th 61, 70, review granted Oct. 12, 2022, S276099 [ICWA error where no inquiry was made of extended family members with whom DCFS was in contact].)

Turning to the question of prejudice, appellate courts have adopted several divergent standards for deciding whether an ICWA inquiry error is prejudicial. These standards have been described as ranging from a presumptive affirmance rule (*In re A.C.* (2021) 65 Cal.App.5th 1060, 1065) to a rule requiring reversal in all cases where ICWA requirements have been ignored (*In re A.R.* (2022) 77 Cal.App.5th 197, 207), or where an inadequate inquiry makes it impossible for the parent to show prejudice (*In re Y.W.* (2021) 70 Cal.App.5th 542, 556). There are also variations in between, including a standard finding harmless error unless the record contains information suggesting a reason to believe the child may be an Indian child (*In re Dezi C.* (2022) 79 Cal.App.5th 769, 779, review granted Sept. 21, 2022, S275578), and a standard finding prejudice where the record shows there was readily obtainable information that was likely to bear meaningfully upon whether the child is an Indian child (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 744).

We believe, however, that the approach adopted by the Fifth District Court of Appeal in *In re K.H.* (2022) 84 Cal.App.5th 566 (*K.H.*) is the correct one. " 'ICWA compliance presents a unique situation' " because its purpose, and the purpose of the California statutes that implement it, " 'is to provide notice to the tribe sufficient to allow it to determine whether the child is an Indian child, and whether the tribe wishes to intervene in the proceedings.' " (*Id.* at p. 608.) In assessing whether an inquiry

17

error is prejudicial, "the relevant injury under ICWA is not tied to whether the appealing parent can demonstrate to the juvenile court or a reviewing court a likelihood of success on the merits of whether a child is an Indian child. The relevant rights under ICWA belong to Indian tribes and they have a statutory right to receive notice where an Indian child may be involved so that they may make that determination. It necessarily follows that the prejudice to those rights lies in the failure to gather and record the very information the juvenile court needs to ensure accuracy in determining whether further inquiry or notice is required, and whether ICWA does or does not apply." (*Id*. at p. 591.) Where there has not been a proper inquiry, "the error is prejudicial because neither the agency nor the court gathered information sufficient to ensure a reliable finding that ICWA does not apply and remanding for an adequate inquiry in the first instance is the only meaningful way to safeguard the rights at issue." (*Ibid*.)

Applying the approach articulated in *K.H.*, we conclude that DCFS's failure to make any inquiry of known and available extended family members on the maternal side of Christopher's family left the juvenile court without sufficient evidence upon which to find that the inquiry was proper, adequate, and duly diligent. As in *K.H.*, the error was prejudicial because "the inquiry fell well short of that required to gather the information needed to meaningfully safeguard the rights of the tribes, as intended under ICWA and California law." (*K.H.*, *supra*, 84 Cal.App.5th at p. 620.)

Additionally, as a majority panel of this division reasoned in *S.S.*, "[p]lacing this child with maternal family members does not dispel prejudice to tribes. [Citation.] Even in such cases, tribes may assert tribal jurisdiction or may formally intervene in

18

state court." (*S.S.*, *supra*, 90 Cal.App.5th at p. 711.) "A 'tribe's rights are independent of the rights of other parties.' " (*Ibid*.) Accordingly, remand for a proper and adequate inquiry of Christopher's maternal extended family is required in this case.

## DISPOSITION

The juvenile court's order denying Mother's section 388 petition is conditionally affirmed, and the matter is remanded for compliance with ICWA and related California law. On remand, the court must promptly direct DCFS to comply with its duty of inquiry in accordance with section 224.2 by interviewing known and available maternal extended family members about the child's possible Indian status. If that information establishes a reason to know that an Indian child is involved, notice must be provided in accordance with ICWA and section 224.3. The court must determine, on the record, whether the ICWA inquiry and notice requirements have been satisfied and whether Christopher is an Indian child. If the court determines Christopher is an Indian child, it must vacate its order and conduct a new hearing on Mother's section 388 petition and all further proceedings in accordance with ICWA and related California law. If not, the court's original order shall remain in effect.


VIRAMONTES, J.


I CONCUR:


WILEY, J.


19

**STRATTON, P. J., Dissenting**

Mother appeals the juvenile court's order establishing a guardianship with a maternal aunt for son Christopher M. She contends DCFS did not comply with its initial duty of inquiry under Welfare and Institutions Code[3] section 224.2, subdivision (b) in that DCFS failed to ask available extended maternal family members whether Christopher is an "Indian child" within the meaning of section 1903 of the federal Indian Child Welfare Act (ICWA). (25 U.S.C. § 1901 et seq.)

DCFS erred in failing to question extended maternal family members despite having contact information for them. However, I conclude the error was harmless because Christopher's designated legal guardian is his maternal aunt.

In enacting ICWA, Congress found "that an alarmingly high percentage of Indian families are broken up by the removal, often unwarranted, of their children from them by nontribal public and private agencies and that an alarmingly high percentage of such children are placed in non-Indian foster and adoptive homes and institutions." (25 U.S.C. § 1901(4).) ICWA reflects the intent of Congress "to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families by the establishment of minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture, and by providing for assistance to Indian tribes in the operation of child and family service programs." (25 U.S.C. § 1902.) The

---

[3]     Undesignated statutory references are to the Welfare and Institutions Code.

court is obligated to ask each "participant" in the proceedings whether they have reason to believe the child is an Indian child and to instruct the parties to inform the court if they subsequently receive information that provides a reason to know the child is an Indian child.  (*In re Austin J.* (2020) 47 Cal.App.5th 870, 882–883, superseded by statute on other grounds as stated in *In re E.C.* (2022) 85 Cal.App.5th 123, 147; see 25 C.F.R. § 23.107(a) (2022).)

As our Supreme Court has recognized, "Congress enacted ICWA in 1978 in response to 'rising concern in the mid-1970's over the consequences to Indian children, Indian families, and Indian tribes of abusive child welfare practices that resulted in the separation of large numbers of Indian children from their families and tribes through adoption or foster care placement, usually in non-Indian homes.' "  (*In re Isaiah W.* (2016) 1 Cal.5th 1, 7.)  In enacting these provisions, " 'Congress was concerned not solely about the interests of Indian children and families, but also about the impact on the tribes themselves of the large numbers of Indian children adopted by non-Indians.' "  (*Id.* at p. 9.)

The concern about separating Indian children from their Indian families, heritage and culture was the topic of extensive Congressional hearings when ICWA was enacted.  As one commentator wrote, the " 'wholesale separation of Indian children from their families is perhaps the most tragic and destructive aspect of American Indian life today.' "  (Atwood, Flashpoints Under the Indian Child Welfare Act: Toward a New Understanding of State Court Resistance (2002) 51 Emory L.J. 587, 601, cited in *In re A.C.* (2022) 75 Cal.App.5th 1009, 1014.)

ICWA authorizes states to provide even more protection than the federal statute provides.  In 2006, the California

legislature enacted parallel statutes to affirm ICWA's purposes and mandate compliance with ICWA in all Indian child custody proceedings. (*In re K.R.* (2018) 20 Cal.App.5th 701, 706, fn. 3.) In California, the child protection agency is obligated to ask "the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child." (§ 224.2, subd. (b); *In re Dominick D.* (2022) 82 Cal.App.5th 560, 566.)

Here, DCFS did not fulfill its duties under section 224.2 as it did not ask extended maternal family members about Indian ancestry, despite having their contact information. This was a legal error. But the next question is whether the error was prejudicial. A prerequisite to reversal of a trial court's decision under California law is a showing of miscarriage of justice. (Cal. Const., art. VI, § 13.)

I find no miscarriage of justice, that is, no prejudice. ICWA itself sets out placement priorities. Section 1915 of title 25 of the United States Code provides that in any adoptive placement of an Indian child under state law, "a preference shall be given, in the absence of good cause to the contrary, to a placement with [¶] (1) a member of the child's extended family; [¶] (2) other members of the Indian child's tribe; or [¶] (3) other Indian families." (25 U.S.C. § 1915(a).) Extended family under ICWA includes aunts and uncles. (25 U.S.C. § 1903(2).)

In this case, the legal guardianship by the maternal aunt (who is residing with the maternal grandparents) implemented ICWA's first preference. Christopher is in no danger of being separated from his biological family, the evil ICWA was enacted to prevent. (*In re J.W.* (2022) 81 Cal.App.5th 384, 391.)

3

Moreover, even if a tribe had intervened, it would be bound by the placement priorities of the statute if, as the court found here, the first placement priority was in the minor's best interest. Given that the placement chosen by the juvenile court is clearly in Christopher's best interests and also promotes rather than eviscerates his connection to his biological family, I am hard pressed to say that a tribe's inability to participate warrants delaying Christopher's unification with, not separation from, his biological family.

I cannot find that ICWA and its California counterpart were intended to elevate a tribe's right to participate over the child's interest in a secure and safe placement within the bosom of the child's biological family. Tribes are included in the proceedings to ensure that no unreasonable and unjustified separation from biological family members occurs. Nothing like that happened here. That the tribe may be the unofficial real party in interest does not supersede the child's best interests. Do we want to unwind this biological-family guardianship so that a tribe can come in and suggest someone else within the first preference category? I do not. There is no miscarriage of justice.

STRATTON, P. J.

4